UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LAKITA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00938-JPH-MG |
| | ) | |
| HOPEBRIDGE,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff LaKita Ward worked as a Registered Behavior Technician ("RBT") for Defendant Hopebridge, LLC. She alleges that Hopebridge discriminated against her because of her race and retaliated against her. Hopebridge has filed a motion for summary judgment. Dkt. [63]. For the reasons below, that motion is **GRANTED.**

## I.
## Facts and Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Here, while Ms. Ward generally disputes Hopebridge's statement of material facts, she cites no record evidence as required. Dkts. 71 at 5; 71-3; 71-4, 71-5; Fed.

[1] Hopebridge has moved to substitute "Hopebridge, LLC," as the Defendant in this action. Dkt. 63 at 1 n.1. Plaintiff did not object. Dkt. 71. The **clerk is therefore directed** to change "Hopebridge" to "Hopebridge, LLC" on the docket.

R. Civ. P. 56(c); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702–03 (7th Cir. 2010) (striking factual assertions that lacked a "direct citation to easily identifiable support in the record").[2] The Court therefore treats Hopebridge's supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527–29 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b)–(f); *see Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("*[P]ro se* litigants are not excused from compliance with procedural rules.").

Hopebridge operates a therapy center in Kokomo, Indiana, where it employs RBTs. Dkt. 63-2 at 2–3 ¶¶ 5, 7 (Crismore Aff.). RBTs provide therapy to clients at the center, take notes on sessions, and are overseen by Board-Certified Behavior Analysts ("BCBAs"). Dkt. 63-1 at 17 (Ward Dep. at 81:1-13), 120 (Employee Handbook). Hopebridge classifies RBTs from Level 1 (lowest) to Level 4 (highest) based on competency. Dkt. 63-2 at 3 ¶ 9. Pay and job expectations correspond with an RBT's level. *Id.* at ¶ 10. Level 3 RBTs, for example, are required to mentor, while Level 1 and 2 RBTs are not. *Id.* at ¶ 11. For scheduling and supervision, RBTs are assigned to a "pod" with other RBTs. *Id.* at 4 ¶ 22. Pod placement does not affect pay or benefits. Dkt. 63-1 at 106–07 (Ward Dep. at 188:18–189:3).

[2] One of Ms. Ward's appendices references "Plaintiff Statement (Exhibit A)," "Witness List (Exhibit B)," "EEOC Correspondence (Exhibit C)," etc., dkt. 71-4 at 2, but those citations do not correspond with Ms. Ward's exhibits, *see* dkts. 72, 74–88; dkt. 73 (directing Ms. Ward to re-file the exhibits referenced in her response brief due to the Court's inability to access the embedded hyperlinks). The Court will not scour each filing to attempt to match it to Ms. Ward's allegations. *See Roger Whitmore's Auto. Serv. Inc., v. Lake Cnty., Ill.*, 424 F.3d 659, 664 n.2 (7th Cir. 2005).

Ms. Ward, a Black woman, started working at Hopebridge in August 2020 as a Level 1 RBT. Dkt. 63-1 at 7–8, 11 (Ward Dep. at 71:25–72:8, 75:14-16). She later advanced to a Level 2 and 3 RBT. Dkt. 63-2 at 3 ¶¶ 12–15. Ms. Ward reported to Leslie Hillis throughout her employment. Dkt. 63-3 at 2 ¶ 5 (Hillis Aff.).

Ms. Ward "struggle[d] to adhere to numerous policies, procedures, and standards of conduct during her employment with Hopebridge." *Id.* ¶ 6. For example, Hopebridge has a policy allowing RBTs to stay clocked in up to 30 minutes after their shift ends to complete administrative tasks. Dkt. 63-1 at 36, 72–73 (Ward Dep. at 100:5-8, 141:9-19, 142:15-21). Ms. Ward was aware of this policy but exceeded the 30-minute limit multiple times. *Id.*; dkt. 63-3 at 3 ¶ 8. She was also frequently late, "fail[ed] to timely submit session notes," and "lack[ed] . . . professionalism when interacting with peers, supervisors, and Hopebridge clients." Dkt. 63-3 at 2–3 ¶ 7.

In July 2023, Ms. Ward submitted an internal complaint alleging three instances of racial discrimination: (1) Ms. Hillis left the door open during a meeting with Ms. Ward about Family and Medical Act ("FMLA") leave; (2) the 30-minute administrative policy was inconsistently applied; and (3) Hopebridge did not conduct a full investigation before writing up Ms. Ward for inappropriate communications. Dkt. 63-1 at 46–48, 52–54, 125–126 (Ward Dep. at 112:8–114:2, 118:1–120:13). Hopebridge found these complaints unsubstantiated. Dkt. 63-5 at 5–6.

In December 2023, Ms. Ward filed a Charge of Discrimination with the EEOC alleging race discrimination and retaliation under Title VII. Dkt. 63-1 at 91–92 (Ward Dep. at 173:15–174:3), 127 (EEOC Charge). In the charge, Ms. Ward stated that she raised discrimination issues to Hopebridge in January 2022 and July 2023, and that her "issues were addressed" but she was "now being subject to retaliation as a result of [her] complaints." *Id.* at 127. She alleged that she was written up for allegedly bullying peers, was not allowed to stay after work or earn extra hours, and was forced to mentor. *Id.*

Ms. Ward filed this action in June 2024, alleging that she was "[f]orced to talk about [her] [FMLA] in front of others"; was told she couldn't stay in the building after her shift to help clean, though others were allowed to stay; was written up for bullying; and was "hound[ed]" to mentor. Dkt. 1 at 2–3, 5–7. Hopebridge has moved for summary judgment. Dkt. 63.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584. A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

## III.
## Analysis

Title VII makes it unlawful for employers to "discharge any individual, or otherwise to discriminate against any individual" because of their race. 42 U.S.C. § 2000e-2(a)(1). The statute also prohibits employers from retaliating against employees "because [they] ha[ve] opposed any practice made an unlawful employment practice by this subchapter, or because [they] ha[ve] made a charge." 42 U.S.C. § 2000e-3(a). Hopebridge argues that it is entitled to summary judgment based on Ms. Ward's failure to exhaust certain claims, and on the merits. Dkt. 66 at 7–18.

### A. Exhaustion

Before bringing Title VII claims, an employee must exhaust administrative remedies by filing an EEOC charge and receiving a right-to-sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). A plaintiff may not bring a claim that wasn't raised in the EEOC charge unless it is "like or reasonably related" to the charge's allegations, meaning the charge and the complaint "describe the same conduct and implicate the same

individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (emphasis deleted) (stating that the complaint claims must be reasonably expected "to grow out of" the EEOC charge).

Hopebridge argues that Ms. Ward failed to exhaust any Title VII harassment/hostile work environment claim. Dkt. 66 at 14 n.7. Ms. Ward does not respond to that argument. *See* dkt. 71 at 5 (arguing, instead, that she "experienced repeated harassment, false accusations, and retaliatory conduct . . . , creating an environment that a reasonable jury could find hostile and discriminatory"). By addressing only the merits of her asserted hostile work environment claim, Ms. Ward waived any argument that she properly exhausted that claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in wavier."). Any harassment/hostile work environment claim is therefore **DISMISSED without prejudice** for failure to exhaust. *See Arnold v. United Airlines, Inc.*, 142 F.4th 460, 477 n.36 (7th Cir. 2025) ("Because [plaintiff] failed to contest United's assertion that this claim was unexhausted, the district court properly dismissed the claim without prejudice.").[3]

**B. Race Discrimination Claim**

Hopebridge argues that it is entitled to summary judgment on Ms. Ward's race discrimination claim because she cannot establish a *prima facie*

[3] Hopebridge also argues that Ms. Ward failed to exhaust her race discrimination claim, dkt. 66 at 9–10, but because this claim ultimately fails on the merits, the Court declines to resolve whether it was properly exhausted. *See Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) ("[A] failure to exhaust administrative remedies is not a jurisdictional flaw.").

case of race discrimination, and even if she could, she cannot demonstrate pretext. Dkt. 66 at 8–13. Ms. Ward responds that she was "treated differently from coworkers," "disciplined based on false accusations," "subjected to harassment by supervisors," "was required to perform tasks outside her training," and "experienced hostility after raising concerns," which would allow a reasonable jury to find race discrimination. Dkt. 71 at 3–4.

Title VII employment discrimination claims can be analyzed under the *McDonnell Douglas* burden-shifting framework, or by considering all the designated evidence together under "*Ortiz*'s holistic approach." *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 809, 814 (7th Cir. 2025); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). Here, the parties focus on *McDonnell Douglas*, so the Court begins there. Dkts. 66 at 8–13; 71 at 2–3. Under the *McDonnell Douglas* framework, a plaintiff must establish that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023). If a plaintiff makes this initial showing, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

The parties do not dispute that Ms. Ward is a member of a protected class. Dkts. 66 at 10; 71 at 2. Hopebridge has designated evidence, however, that Ms. Ward did not perform her job to her employer's expectations. Dkt. 63-3 at 2–3 ¶¶ 6–7 ("Lakita struggle[d] to adhere to numerous policies, procedures, and standards of conduct during her employment with Hopebridge," including "habitual lateness," "failure to timely submit session notes," and "overall lack of professionalism."). Ms. Ward cites no evidence to place those facts in dispute. Dkt. 71 at 2–3, 7–8 (claiming, without citing designated evidence in support, "[s]atisfactory job performance" and completion of various trainings); *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (The non-moving party must "identify[] specific, admissible evidence showing that there is a genuine dispute of material fact for trial. Inferences supported only by speculation or conjecture will not suffice.").

Moreover, Ms. Ward has designated no evidence that she experienced an adverse employment action. *See* dkt. 71 at 3 (stating generally that she was "disciplined"); *Paterakos v. City of Chi.*, 147 F.4th 787, 796 (7th Cir. 2025) (An adverse employment action is "some quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment."). She similarly designated no evidence that comparators, that is, similarly situated employees outside her protected class, were treated more favorably. *Mitchell*, 143 F.4th at 814. Though Ms. Ward argues that she was "treated differently from coworkers," dkt. 71 at 3, she does not identify them, explain how they were "similarly situated" to her, or otherwise explain how those individuals qualify as

comparators suitable for a Title VII analysis. *See also Mitchell*, 143 F.4th at 810 (explaining that the purpose of the "similarly situated inquiry is to eliminate other possible explanatory variables, . . . [to] isolate the critical independent variable—discriminatory animus" (quoting *Smith v. City of Janesville*, 40 F.4th 816, 823 (7th Cir. 2022)).

Ms. Ward's race discrimination claim also fails under *Ortiz*'s holistic approach. This method "look[s] at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023) (citing *Ortiz*, 834 F.3d at 766). Here, the undisputed designated evidence is that Ms. Ward's performance did not meet Hopebridge's legitimate expectations, and that Hopebridge determined that her internal complaints of racial discrimination were unsubstantiated. Dkt. 63-3 at 2–3 ¶¶ 6–7 (Hillis Aff.); dkt. 63-5 at 5–6. No reasonable jury could conclude from that evidence, considered "as a whole," that Ms. Ward was subjected to prohibited discrimination. *Wilson v. AIM Specialty Health*, 176 F.4th 977, 987 (7th Cir. 2026).

Because the designated evidence does not present a triable issue of fact on Ms. Ward's Title VII racial discrimination claim, Hopebridge's motion for summary judgment is **GRANTED** as to this claim.[4]

**C. Retaliation Claim**

[4] The Court therefore does not reach the parties' arguments regarding pretext, *see* dkts. 66 at 13–14; 71 at 4–5, or Hopebridge's argument that Ms. Ward "admit[ted] [that] Hopebridge addressed her concerns of discrimination, dkt. 66 at 8–9.

Hopebridge argues that it is entitled to summary judgment on Ms. Ward's retaliation claim because she did not demonstrate an adverse employment action or a causal link between an adverse action and any protected activity. Dkt. 66 at 14–18. Ms. Ward responds that, after reporting wage discrepancies and filing internal and EEOC complaints, she was subject to "increased scrutiny," "disciplinary actions," "hostile treatment," and termination. Dkt. 71 at 3–4, 8.

To prove a Title VII retaliation claim, a plaintiff must establish that: (1) she engaged in protected activity; (2) her employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *See Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024). To constitute an "adverse employment action," the employer's action "must materially alter the terms and conditions of employment." *Paterakos*, 147 F.4th at 796. And to establish a causal connection, the plaintiff must show that the employer would not have taken the adverse action "but for" the plaintiff's protected activity. *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir. 2001).

Here, assuming Ms. Ward engaged in protected activity by filing complaints, she has designated no evidence that her complaints caused any adverse employment action. She references "disciplinary actions" and "hostile treatment," dkt. 71 at 4, but does not further describe that conduct, let alone designate evidence in support. *See Johnson*, 892 F.3d at 894. For her allegation of retaliatory termination, Hopebridge has designated evidence that

Ms. Ward filed an internal complaint in July 2023, filed her EEOC Charge in December 2023, and was terminated on August 1, 2024. Dkt. 63-1 at 21, 46–48, 52–54, 125–126 (Ward Dep. at 85:1-17, 112:8–114:2, 118:1–120:13). Even if those events could be considered close in time, temporal proximity "will rarely be sufficient in and of itself to create a triable issue" of fact. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 974 (7th Cir. 2012). Here, Ms. Ward has designated no evidence to support her undeveloped argument of temporal proximity. Dkt. 71 at 4, 8. That, alone, is insufficient to defeat summary judgment. *See Kasten*, 703 F.3d at 974.

For these reasons, Hopebridge's motion for summary judgment is **GRANTED** as to the retaliation claim.

## IV.
## Conclusion

Defendant's motion for summary judgment is **GRANTED**, dkt. [63], as to Ms. Ward's Title VII race discrimination and retaliation claims. Her harassment/hostile work environment claim is **DISMISSED without prejudice** for failure to exhaust.

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 8/25/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LAKITA WARD
3113 Vinton Circle
Kokomo, IN 46902

All electronically registered counsel